UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JETPAY CORP., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-03376-X |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM ORDER AND OPINION

JetPay Corp. (JetPay) was a credit card processor for airline Southern Sky Tours, d/b/a Direct Air (Direct Air). When Direct Air went bankrupt, JetPay was contractually obligated to refund the excise taxes back to the customers it collected them from. But Direct Air's bankruptcy left JetPay holding the bag for some of those excise taxes in the first quarter of 2012. JetPay made a claim for a refund and then filed this suit to seek a refund from the United States. The United States moved for summary judgment, arguing JetPay claimed a refund too late and also lacked standing to sue because it is not the taxpayer or collector as defined by federal law. [Doc. 76]. The Court agrees with the United States that federal law waives sovereign immunity for the air travelers as taxpayers and Direct Air as the collector (because it was the one who paid the taxes to the government). But as such, sovereign immunity bars JetPay's suit for a refund. Simply put, JetPay contracted to pay back excise taxes, but it is not a person federal law allows to sue for a refund. Accordingly, the Court **GRANTS** the motion and dismisses JetPay's suit without prejudice.

1

## I.      Facts

JetPay sells credit card processing services to merchants and banks.  Direct Air was a charter airline that contracted with JetPay to process credit card transactions for its customers.  Purchases would include amounts for airfare and a federal excise tax of 7.5%.  JetPay would submit those amounts to Direct Air, who would pay the excise taxes to the United States.

JetPay was responsible for any chargebacks that might arise that Direct Air couldn't pay for.  Direct Air stopped operating in March 2012 and filed for bankruptcy. Direct Air's account to cover chargebacks was depleted, and JetPay fulfilled its obligation to reimburse passengers for the excise taxes they paid.  The parties dispute whether Direct Air paid excise taxes for the first quarter of 2012.  JetPay filed for a refund with the Internal Revenue Service (IRS) in May 2014, seeking a refund of $2,691,080 for excise taxes paid in the first quarter of 2012.  When the IRS disallowed the refund, JetPay filed this suit.

## II.      Legal Standard

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  "A fact is material if it 'might affect the outcome of the suit'" and a "factual

---

[1] FED. R. CIV. P. 56(a).

dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[2]

## III.    Application

The United States' motion for summary judgment contends first that JetPay claimed a refund too late and also lacks standing to sue because it is not the payor or collector as defined by federal law.  Jet Pay counters that it timely claimed a refund and has standing as a collector or the one that bore the economic burden.  JetPay also claims equitable subrogation principles allow it to stand in the shoes of the taxpayers and the United States has paid refunds to other entities in JetPay's situation.  The Court concludes that sovereign immunity bars JetPay's claim because JetPay does not fit within the language of any of Congress's statutes that waive immunity for excise tax refund claims.

JetPay claims it has standing as a collector, as the bearer of the economic burden, through equitable subrogation, and based on IRS treatment of other similarly situated entities.  The Court takes each in turn.

<u>Collector standing</u>: The applicable federal law on refund of excise taxes, 26 U.S.C. § 6415(a), allows collectors to seek refunds:

> Credit or refund of any overpayment of tax . . . may be allowed to the person who collected the tax *and paid it to the Secretary* if such person establishes, under such regulations as the Secretary may prescribe, that he has repaid the amount of such tax to the person from whom he

---

[2] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

3

collected it, or obtains the consent of such person to the allowance of such credit or refund.[3]

The problem for JetPay is that, while it may feel like a collector, it fails to fit within the statutory definition of one because it undisputedly did not pay the excise taxes it collected to the government. Here, Direct Air would be a collector[4] and air travelers would be taxpayers. That leaves JetPay as nothing under the statute that waives immunity.

JetPay responds that Direct Air was the IRS's agent, so JetPay was paying the IRS. In support, JetPay quotes from *Kaucky v. Southwest Airlines Co.*, that the government "makes a private firm the Internal Revenue Service's 'collection agent' (we are not using 'agent' in any technical sense), as it has done with the airline tax and other excise taxes, . . . the firm corresponds to an employee of the Service."[5]

*Kaucky* confirms this Court's reading of federal law. There, Southwest expected excise taxes to be renewed and collected them, the taxes weren't renewed, and angry air travelers wanted a refund from Southwest.[6] What to do? *Kaucky* held that Southwest was the collector[7] and that federal law did not contemplate a private

---

[3] 26 U.S.C. § 6415(a) (emphasis added).

[4] The United States claims that Direct Air paid no excise taxes for the first quarter of 2012. JetPay disputes that. If the United States is right, Direct Air would not qualify for collector standing if it failed to pay the United States.

[5] 109 F.3d. 349, 351 (7th Cir. 1997). *See also id.* at 352 ("It makes no difference whether the firm is still holding the money it erroneously collected or has passed it on to the IRS. The principal is bound by the agent's act. The IRS has plenty of remedies against its collection agents who fail to remit taxes that they collect.").

[6] *Id.* at 349–51.

[7] *Id.* at 353 (referring to Southwest as the IRS's "collection agent").

cause of action from a taxpayer against a collector[8] (but acknowledged tools the United States has against bad collectors).[9]

Applying *Kauky* here, Direct Air is the collector.  It would have a claim for a refund against the United States within Congress's waiver of sovereign immunity, as would the air travelers as taxpayers.  Also under *Kauky*, the air travelers would have no cause of action against Direct Air (and neither does JetPay under this statute). But there is also not a waiver of sovereign immunity for a middleman like JetPay to sue the United States.

<u>Economic burden standing</u>: JetPay also claims it has standing as the person that bore the economic burden of the repaid excise taxes.  JetPay claims this doctrine is a judicially created separate and additional path for proving standing for those who fail to meet the requirements of section 6415(a).  The United States argues this doctrine is a court-created method) to ensure that one of the two persons that section 6415(a) authorizes to seek refunds will not be being unjustly enriched by passing the tax burden to the other party and then getting the refund from the government.  The Court agrees with the United States.

---

[8] *Id.* ("Whatever the provision's precise scope, there is no express authorization for suits by taxpayers to enforce it [against collectors]; no indication that Congress would have wanted the courts to entertain such suits despite the absence of express authorization, and a practical reason for the courts not to create such an action: it would throw a monkey wrench into machinery designed to confine suits for the refund of federal taxes to suits in the federal courts against the government in order to protect its private as well as public agents from being whipsawed.  So this suit cannot be saved by recharacterizing it as a suit to enforce section 6415(c).  It is a tax refund suit brought against the wrong party." (whole lotta citations omitted)).

[9] *Id.* ("If . . . people who paid the tax later obtained refunds from the IRS for the money retained by its dishonest collection agent, the IRS would have a number of remedies, criminal as well as civil, against Southwest.").

As an initial matter, JetPay's argument distorts relevant caselaw in a way that misapprehends the interplay of sovereign immunity and separation of powers. The United States has sovereign immunity, only Congress can waive it, and the courts strictly construe those waivers.[10] As a result, it is not for the courts to create a new category of individuals who may sue the United States for a tax refund. But the courts may strictly construe Congressional language on who may sue for a refund.

As to excise tax refunds, federal law waives immunity for a claim from "the person who made the overpayment"—the taxpayer.[11] Section 6415(a) also allows a collector to seek a refund if it either (1) repaid the tax to the taxpayer, or (2) has the taxpayer's consent for the collector to get the refund.[12] The point of requiring proof of repayment or consent is to avoid collectors obtaining unjust enrichment in getting the refund without repaying the taxpayer.[13]

JetPay cites to *United States v. Walker*[14] for the economic burden test. According to a page-long per curiam decision from the old Fifth Circuit, the test operates like this: if a collector paid the tax from his own pocket and did not seek to pass the tax on to the passenger, the collector can seek a refund.[15] In other words, a

---

[10] *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992).

[11] 26 U.S.C. § 6402(a).

[12] *Id*. § 6415(a).

[13] *Gumpert v. United States*, 296 F.2d 927, 929 (Ct. Cl. 1961) ("Congress saw fit by statute to limit the right to recovery in order to preclude what would otherwise result in unjust enrichment.").

[14] 234 F.3d 910, 911 (5th Cir. 1956) (per curiam).

[15] *U.S. v. Walker*, 234 F.3d 910, 911 (5th Cir. 1956) ("The statute requires that a recovery of taxes collected by virtue of the Transportation Tax Act can be had only upon proof that the taxpayer

6

collector acting like a taxpayer by using its own money can get a refund. Assuming this is a correct articulation of the test,[16] JetPay doesn't qualify for it because JetPay didn't use its own money. JetPay admitted in its summary judgment briefing that "JetPay refunded to Direct Air's customers the excise tax that was initially collected by JetPay, thus making the customers whole."[17] As such, JetPay is not a collector with standing to sue for a refund under the economic burden doctrine.

Equitable subrogation: Next, JetPay claims it has standing under the state-law concept of equitable subrogation, which allows it to stand in the shoes of the original taxpayer with respect to federal refund rights. The United States responds that only Congress (not state common law) may waive federal sovereign immunity, and Congress has only done so for taxpayers, collectors, and limited third-party situations that don't apply here. The Court agrees with the United States.

---

repaid the amount of such tax to the person from whom he collected it or obtained the consent of such person to the allowance of such credit or refund. *The taxpayers here sought to avoid the application of this statute by asserting that they had paid the taxes out of their personal funds and had not collected them from their patrons*." (emphasis added)).

[16] There are two reasons the economic burden test might not be as suggested. First, the suggested formulation seems to add a third category of those who may sue for refunds: (1) taxpayers, (2) collectors, and (3) *collectors acting like taxpayers because they paid from their own pockets*. Congress waived immunity for 1 and 2. How can the courts waive immunity for 3? Second, *Walker* is a single page per curiam case from the old Fifth Circuit. The most recent Fifth Circuit articulation on this topic appears to be *Bombardier Aerospace Corp. v. United States*. 831 F.3d 268, 274 (5th Cir. 2016). There, the Fifth Circuit focused on whether repayment or consent for collectors must occur before the filing of the suit or whether they can occur when the suit is pending. *Bombardier* landed on the former position: "The district court on remand reiterated the prerequisites rule, noting that if 'it is admitted that [the plaintiff] did not make the refund . . . or obtain consents' required by Section 6415(a), 'that ends the suit . . . .' Without specifically addressing the prerequisites rule, we agreed with the district court's ruling on a subsequent appeal." *Id*. at 274 (citations omitted) (alterations in original). In other words, a collector must repay or obtain consent as a prerequisite to filing suit, even though *Walker* said those two prerequisites might never need to happen. If *Bombardier* is right, *Walker* might not be the operative test.

[17] Doc. 80 at 17.

As addressed above, it is up to Congress to waive sovereign immunity, and the courts strictly construe those waivers.[18]  More specifically, the Supreme Court has held that federal debts are under the exclusive jurisdiction of Congress and the Internal Revenue Code.[19]  As a result, "[s]ince the federal revenue laws are designed for a national scheme of taxation, their provisions are not to be deemed subject to state law unless the language or necessary implication of the section involved so requires."[20]

Here, the Internal Revenue Code allows refund suits by taxpayers,[21] collectors[22] (who—unlike JetPay—actually paid the taxes to the government), and third parties in situations that do not apply here.[23]  There is no language in these three provisions that look to state law.  Nor is there a necessary implication that these statutes look to state law by routes such as equitable subrogation.  In fact, the existence of the collector and third-party statutes indicates there is no need to look to state equitable subrogation principles.  That would only be needed if Congress only

---

[18] *Nordic Village, Inc.*, 503 U.S. at 33–34.

[19] *Helvering v. Stuart*, 317 U.S. 154, 161 (1942).

[20] *Id.* (quotation marks omitted).

[21] 26 U.S.C. § 6402.

[22] 26 U.S.C. § 6415.

[23] 26 U.S.C. § 7426.  This statute waives sovereign immunity for situations involving tax collections from a third party's property for: (1) wrongful levy; (2) surplus proceeds; (3) substituted sale proceeds; and (4) substitution of value.  This statute was in response to the Supreme Court allowing a third party to dispute a tax lien in *Williams v. United States*, 514 U.S. 527 (1995).  *Wagner v. United States*, 545 F.3d 298, 303 (5th Cir. 2008) ("Following *Williams*, Congress enacted § 7426(a)(4), and recent cases have noted that § 7426 is now the only avenue for third party actions.").  Regardless, JetPay doesn't argue it fits within this third-party statute.

8

spoke to taxpayers being able to sue for a refund.  But the fact that Congress specifically defined which non-taxpayers could seek a refund means Congress spoke to the matter in a manner that leaves no room for state law to work.  As such, state law equitable subrogation does not preempt the federal requirements for taxpayers, collectors, and limited third parties to sue for a transportation excise tax refund.

JetPay next contends that it is simply fitting into the language of a general refund statute in 28 U.S.C. § 1346(a)(1) that the Supreme Court previously interpreted to accommodate a third party seeking to challenge a tax lien.  Section 1346(a)(1) confers jurisdiction over claims against the United States "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected."  True, the Supreme Court in *Williams v. United States* allowed a third party to use that statute to challenge a tax lien she satisfied.[24]  But then Congress acted to supersede that decision by defining in 26 U.S.C. § 7246 which third parties may sue for refunds.[25]  So as a third party, the question now for JetPay is whether it fits within 26 U.S.C. § 7246 (which it never tries to argue)—not whether it fits within 28 U.S.C. § 1346.

Even if Congress didn't supersede *Williams*, JetPay still wouldn't have standing under *Williams*.  The Supreme Court in *Williams* repeatedly referred to section 1346 conferring standing on the one who paid the taxes to the government— which isn't JetPay here.  It framed the ultimate question as whether "the waiver of

---

[24] 514 U.S. at 536.

[25] *See, e.g.*, *Wagner*, 545 F.3d at 303 ("Following *Williams*, Congress enacted § 7426(a)(4), and recent cases have noted that § 7426 is now the only avenue for third party actions.").

sovereign immunity in [section] 1346(a)(1) authorizes a refund suit by a party who, though not assessed a tax, paid the tax under protest."[26]  The Court discussed whether the law "afforded a remedy to those who, like Williams, had paid money they did not owe[.]"[27]  The *Williams* Court further related that the government "accept[ed] her tax payment under protest"[28] and that Williams was "one from whom taxes are erroneously or illegally collected[.]"[29]  There, Williams paid the United States under protest.  Here, JetPay paid Direct Air, who may or may not have paid the United States.  JetPay can't fit within *Williams* even if Congress didn't supersede *Williams*.  As such, neither equitable subrogation nor section 1346(a)(1) bring JetPay's claim within a waiver of sovereign immunity.[30]

Equal treatment: JetPay's final standing argument is that the United States has issued refunds to similarly situated entities as JetPay.  The United States responds that there is no evidence of unequal treatment with another reported decision, and the federal government nonetheless has discretion to settle its cases.  The Court agrees with the United States.

---

[26] 514 U.S. at 531.

[27] *Id.* at 532.

[28] *Id.* at 535.

[29] *Id.* at 536.

[30] The Court wonders whether *Williams* would control transportation excise tax refunds had Congress not superseded it.  Section 1346 is a general refund statute.  Sections 6402 and 6415 are specific refund statutes as to the transportation excise tax and are much narrower.  Courts tend to view specific statutes as exceptions to general ones and also read conflicting statutes in a way that renders none meaningless.  *See* BRYAN A. GARNER & ANTONIN SCALIA, READING LAW 174, 183, 252 (2012) (surplusage canon, general/specific canon, related-statutes canon).  Combining those principles of statutory construction with our rule strictly construing waivers of sovereign immunity lends an additional basis to not find JetPay's claim to be within a waiver of sovereign immunity.

At base, JetPay is making a merits argument.  But you can't get to the merits if sovereign immunity bars your suit.  Here, JetPay never fit within a waiver of sovereign immunity because there is no unambiguous Congressional language waiving sovereign immunity for someone in JetPay's situation.  As such, the Court lacks power to even address the merits argument of whether the United States has paid refunds or settled cases with entities in the situation JetPay faces now (and what that would mean as to JetPay if that disparate treatment had occurred).[31]

## IV.    Conclusion

For the foregoing reasons, the Court concludes that sovereign immunity bars JetPay's refund lawsuit, and the Court **GRANTS** the United States' motion for summary judgment and **DISMISSES WITHOUT PREJUDICE** this action.  A separate final judgment will follow.

**IT IS SO ORDERED** this 14th day of December, 2020.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[31] Because the Court concludes that sovereign immunity bars JetPay's refund lawsuit, the Court need not also decide whether JetPay filed its refund claim late.

11